[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 23-13807

_____

JEANNE WEINSTEIN,
individually, and on behalf of all others
similarly situated,

                                        Plaintiff-Appellant,

versus

440 CORP.,
d.b.a. The Ridge Great Steaks & Seafood,
STEPHEN CAMPBELL,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:19-cv-00105-RWS

_____

Before WILLIAM PRYOR, Chief Judge, GRANT, and KIDD, Circuit Judges.

KIDD, Circuit Judge:

Federal Rule of Civil Procedure 41(a) permits the dismissal of a single defendant in a multiple-defendant case, so long as *all* claims that the plaintiff brought against that defendant are dismissed. That has been clear in this Circuit and its predecessor for over fifty years. We now adopt the logical extension of that rule: Rule 41(a) permits the dismissal of a single *plaintiff* in a multiple-plaintiff case, so long as *all* claims that the plaintiff brought against any defendant are dismissed.

Because the district court's dismissal of a subset of the opt-in plaintiffs in this Fair Labor Standards Act case was proper, and we otherwise find no error in its decisions below, we affirm the district court's judgment in favor of the Defendants.

## I. BACKGROUND

Jeanne Weinstein previously worked as a server at The Ridge Great Steaks & Seafood, operated by Stephen Campbell. The Ridge paid its servers and bartenders $2.15 per hour. So, to meet or exceed the $7.25 federal minimum wage, it had to supplement its employees' income with the tips they received each shift. The

Ridge also guaranteed the hostesses, food runners, and bussers (i.e., the support staff) a flat hourly wage of $10.00: $2.15 from The Ridge and the remainder from the tip pool money collected from the servers and bartenders each night. The Ridge required all servers and bartenders to contribute 3% of their gross food sales to the tip pool, and those employees could retain any tips above the 3%. This case stems from what The Ridge did with that remainder.

If the tip pool failed to generate sufficient funds to fully compensate the support staff and the server trainees, The Ridge would supplement their wages itself. If the tip pool was more than sufficient to cover those employees, The Ridge required the remaining funds to be distributed to the bartenders who worked that night's shift. When there were extra tips, the server-manager on duty was responsible for collecting them and placing them in an envelope in The Ridge's safe. The server-manager was supposed to write on the back of the envelope the date of the shift, the amount of extra tips collected, and the names of the bartenders to whom the extra tips should be distributed. But the server-managers did not always follow this last step.

Sometimes, a server-manager would instead write that the extra tips were to be distributed to the "bar," without naming a specific bartender. This ambiguity caused confusion among the staff. Compounding the confusion, The Ridge's server-managers, including Weinstein, did not consistently follow certain protocols to ensure the proper accounting of all tips. For example, The Ridge required server-managers to record all tipped employees' earnings

on cash out records at the end of every shift. The records listed each server who worked that shift, their gross sales, their respective 3% tip share contribution, and a final tally of the total tip share amount deposited into that shift's tip pool. The records, however, were not always timely or fully completed at the end of each shift.

When server-managers left incomplete cash out records with the extra tip envelope in the safe overnight, Maureen Richards, The Ridge's bookkeeper, had to reconcile the extra tip distributions the following day. But Richards was not responsible for distributing extra tips in cash to the bartenders. Instead, Richards delegated that responsibility to the server-managers on duty each shift. To do so, Richards would note on a "Support Staff Tipshare Grid" which server-manager was supposed to distribute the extra tips to which bartender, and she would initial next to that note to show that she had received and accounted for the extra tips that were collected after the previous shift. Richards would then leave the grid on a clipboard outside the manager's office. The server-managers and bartenders were supposed to sign the grid when the extra tips were distributed and received, but they did not always do so.

This case began when the Plaintiffs filed a collective action complaint alleging that the Defendants violated the FLSA's minimum wage requirement. Some employees of The Ridge, such as Weinstein and Arica Lehan, consented to become party plaintiffs at filing. Other employees later opted in as plaintiffs, including Adelle Drake, Tanya Gonzalez, Charles Lewis, and Karla Schroth.

23-13807               Opinion of the Court                    5

Subsequently, however, the Plaintiffs filed unopposed motions to voluntarily dismiss Drake, Gonzalez, Lewis, Lehan, and Schroth as plaintiffs. The district court granted the motions and dismissed the five opt-in plaintiffs.

The Defendants raised a tip credit affirmative defense in response to the Plaintiffs' wage claims, and on summary judgment, the district court ruled partially in their favor. It found that the Defendants did not distribute the tip pool funds to any employees who were not customarily or regularly tipped. The only question left for the bench trial was whether the Defendants retained any portion of the tip pool funds for themselves.

After hearing all the evidence at trial, the district court could not conclusively trace the extra tips from The Ridge's safe to the bartenders. Plaintiff Weinstein testified at trial that she had never hand delivered extra tips to the bartenders. Richards also testified that she had never hand delivered extra tips to the bartenders. One of the bartenders testified that she never received extra tips in cash from anyone. Moreover, after the district court's review of the documentary evidence at trial, it was unable to trace the extra tips from the safe to their final destinations.

Despite this evidentiary gap, the district court was able to "eliminat[e] certain destinations from the realm of possibilities." The district court found that Richards never kept any portion of the extra tips for herself, nor did she reserve any tips for The Ridge. The testimony also established that Campbell did not have access to the safe where the extra tips were kept. So, he could not have

retained them without assistance from one of the other server-managers, and there was no evidence of any such assistance. The district court concluded that the Defendants did not retain any of the extra tips that were supposed to be distributed to the bartenders, and the extra tips at issue could have gone only to tipped employees. As a result, the Defendants operated a lawful tip pool within the parameters of the FLSA.

Because the district court had previously ruled for the Defendants on the first two elements of the tip credit defense, it found that the Defendants had successfully asserted the defense, and the Plaintiffs could not prevail on their minimum wage claim. The court entered judgment in favor of the Defendants, and this appeal followed.

## II. STANDARD OF REVIEW

We review questions regarding our jurisdiction de novo. *Esteva v. UBS Fin. Servs. Inc.* (*In re Esteva*), 60 F.4th 664, 670 (11th Cir. 2023). Following a bench trial, we review a district court's conclusions of law de novo and its findings of fact for clear error. *Hodges v. United States*, 78 F.4th 1365, 1374 (11th Cir. 2023); *Wexler v. Anderson*, 452 F.3d 1226, 1230 (11th Cir. 2006).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain why the dismissal of several opt-in plaintiffs during the early stages of this litigation does not deprive us of jurisdiction. Second, we explain why we do not find error in the district court's conclusion that the Defendants asserted a valid tip credit defense.

### A. Jurisdiction

We have an obligation to ensure that we have jurisdiction, "[e]ven when the parties agree that [it] is proper." *In re Esteva*, 60 F.4th at 670. Our jurisdiction is generally limited to final decisions of the district courts. 28 U.S.C. § 1291. "An order that adjudicates fewer than all the claims against all the parties to an action is typically not a final judgment from which an appeal may be taken." *Baxter v. Santiago-Miranda*, 121 F.4th 873, 883 (11th Cir. 2024). And the way a party or claim is removed from a case could affect whether a decision adjudicates all claims against all parties. *See id.*

Here, the district court entered judgment in favor of the Defendants following a bench trial. But earlier in the litigation, several plaintiffs who had initially opted into the case chose to abandon their claims and seek voluntary dismissal under Rule 41(a)(2). The district court granted this request, dismissing "the claims" of opt-in plaintiffs Drake, Gonzalez, Lewis, Schroth, and Lehan without prejudice. Our jurisdiction turns on whether these dismissals were valid.

Rule 41 governs the "Dismissal of Actions." Fed. R. Civ. P. 41. Rule 41(a)(1) allows a plaintiff to voluntarily dismiss an "action" by filing (i) a notice of dismissal before the opposing party answers or moves for summary judgment, or (ii) a stipulation of dismissal signed by all parties who have appeared. The next subsection, Rule 41(a)(2), provides that, except for the methods set forth in Rule 41(a)(1), an "action" may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.

Our Court has consistently emphasized the narrow scope of Rule 41(a). "We give the Federal Rules of Civil Procedure their plain meaning," *City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1036 (11th Cir. 2023) (citation modified), and the text of "the Rule speaks of voluntary dismissal of 'an action,' not a claim," *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004) (citation modified). Moreover, "the word 'action' is used identically in both Rules 41(a)(1) and 41(a)(2)." *Rosell v. VMSB, LLC*, 67 F.4th 1141, 1144 (11th Cir. 2023).

We have explained that "'action' denotes a lawsuit, a civil proceeding, or the entire controversy, whereas 'claim' is used to refer to a particular demand for money, property, or a legal remedy." *In re Esteva*, 60 F.4th at 675 (citation modified). Thus, we have consistently held that Rule 41 "does not permit plaintiffs to pick and choose, dismissing only particular claims within an action," *Klay*, 376 F.3d at 1106, and "[a]ny attempt to use [Rule 41(a)] to dismiss . . . anything less than the entire action[] will be invalid," *Rosell*, 67 F.4th at 1143.

But "[w]e have recognized an exception to this rule, allowing plaintiffs to voluntarily dismiss less than the entire action so long as they dismiss a defendant in its entirety (i.e., they dismiss all of the claims brought against that defendant)." *In re Esteva*, 60 F.4th at 677; *see, e.g., Klay*, 376 F.3d at 1106 (recognizing that "Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant"); *Plains Growers, Inc. ex rel. Florists' Mut. Ins. Co. v.*

*Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253 (5th Cir. 1973)[1] ("[P]laintiff is entitled to a dismissal against one defendant under Rule 41(a), even though the action against another defendant would remain pending."). We have explained that this "exception (if it can be called that) is compatible with [Rule 41(a)'s] text because in a multi-defendant lawsuit, an 'action' can refer to all the claims against one party." *Rosell*, 67 F.4th at 1144 n.2. The same logic holds true for a lawsuit with multiple plaintiffs.

We now make clear that, under Rule 41(a), an "action" refers to all claims that an individual plaintiff has brought against an individual defendant, even if multiple actions involving multiple parties have been combined into a single lawsuit. *Cf. Elmore v. Henderson*, 227 F.3d 1009, 1011–12 (7th Cir. 2000) ("When there are several plaintiffs in a single suit and one is dismissed out, whether under Rule 21 or any other rule or doctrine, it is as if he had brought a separate suit that was dismissed."). A single plaintiff *or* a single defendant may be dismissed from a lawsuit pursuant to Rule 41(a) if (and only if) all claims involving the dismissed party are also dismissed.

The use of Rule 41(a) to dismiss all claims between two parties allows a district court to set aside the claims involving the dismissed party, even if claims involving the remaining party and other litigants are left unresolved. This reading is consistent with

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

the purpose of Rule 41(a), which "is to permit a plaintiff to take [a] case out of court at an early stage if no other party will be prejudiced." *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979); *see Plains Growers,* 474 F.2d at 254 ("It can be reasonably argued that the court should determine whether the remaining parties will be prejudiced by the dismissal when the plaintiff seeks the dismissal of less than 'all.'").

In this case, the five opt-in plaintiffs who sought voluntary dismissal under Rule 41(a)(2) wished to take their individual "case[s] out of court" before any significant litigation had begun. *Exxon Corp.*, 599 F.2d at 662; *see Plains Growers*, 474 F.2d at 254. There were no claims remaining between these dismissed plaintiffs and any of the Defendants, and there is no indication that any of the remaining parties were prejudiced by the plaintiffs' departure from the case. *See Plains Growers*, 474 F.2d at 254.

We conclude that the district court's order dismissing opt-in plaintiffs Drake, Gonzalez, Lewis, Lehan, and Schroth was valid under Rule 41(a)(2), and their claims have been finally resolved for purposes of our appellate jurisdiction. 28 U.S.C. § 1291; *see Acheron Cap., Ltd. v. Mukamal*, 22 F.4th 979, 986 (11th Cir. 2022).[2]

---

[2] Although the opt-in plaintiffs sought dismissal under Rule 41(a), we note that Rule 41 does not provide the sole method for dismissing a party. Notably, Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "Dropping or adding a party to a lawsuit pursuant to Rule 21 is left to the sound discretion of the trial court," which is "afforded great discretion in managing [its] docket[]."

### B. The Defendants' Tip Credit Defense

The FLSA generally requires employers to pay workers a minimum wage, currently $7.25 per hour. 29 U.S.C. § 206(a)(1)(C); see Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010). But there are exceptions to this requirement. As relevant here, the FLSA's "tip credit" exception allows an employer to pay below the minimum wage if the difference is covered by the employee's tips. See 29 U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59 (2024).

This exception is available only if certain conditions are satisfied. First, the employee must be a "tipped employee." 29 U.S.C. § 203(m)(2)(A). Second, the employer must inform the employee in advance that it intends to count a portion of the employee's tips toward the minimum wage. *Id.* Third, the employee must retain the tips he or she receives. *Id.*

Notably, the third requirement does not preclude tip pools with other employees who "customarily and regularly receive tips." *Id.* An employer may even require tipped employees to

---

*Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045–46 (11th Cir. 1986).

The district court below did not cite any rule in its dismissal order. As such, we could review the district court's dismissal order under Rule 41 or Rule 21, and either avenue would result in a valid dismissal of the five opt-in plaintiffs for the purposes of our appellate jurisdiction. *See Baxter*, 121 F.4th at 885 ("Where ambiguous or not fully explained, we construe the district court's words to support a lawful judgment.").

participate in a tip pool. *Id.* But if an employer requires tipped employees to participate in a tip pool with other employees who do *not* customarily receive tips, then the tip pool is invalid, the employer is not permitted to take a tip credit, and it must pay the employee the minimum wage. *Id.* § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."). The question in this case is whether all of the tip money was fully distributed to The Ridge's employees who were customarily and regularly tipped employees.

An employer that chooses to use the tip credit exception, like The Ridge, is entitled to an affirmative defense against a claim that it violated the FLSA by paying less than the minimum wage. But the employer bears the burden of proving that it has satisfied all of the requirements for the exception. *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).

At summary judgment, the district court found that the Defendants had established the first two elements of the defense: (1) employees who received tips qualified as "tipped employees"; and (2) the Defendants notified the employees that they intended to claim the tip credit. The district court also found that the Defendants did not distribute the tip pool funds to any employees who were not customarily or regularly tipped. Thus, the only factual dispute left for trial was whether the Defendants ever retained tips from the tip pool.

After the bench trial, the district court could not "conclusively trace the extra tips from The Ridge's safe to the bartenders," but it was able to "eliminat[e] certain destinations from the realm of possibilities." The district court concluded that the Defendants never retained any of the extra tips at issue. Richards never kept any portion of the extra tips for herself, nor did she reserve any tips for The Ridge. And Campbell did not have access to the safe where the extra tips were kept. The Plaintiffs conceded that, if Richards and Campbell did not take the extra tip money, the only other employees with access to the money were tipped employees. As a result, the district court determined that the extra tips at issue could have gone only to tipped employees.

This Court will not disturb the district court's credibility findings regarding the witness testimony it heard at trial, and the district court determined that Richards's testimony was credible. Further, under the clearly erroneous standard, the district court's findings of fact must stand unless we are left with the definite and firm conviction that a mistake has been made. *Cuenca v. Rojas*, 99 F.4th 1344, 1350 (11th Cir. 2024). We are left with no such conviction.

After hearing the trial testimony, the district court credited the Defendants' explanations regarding the distributions of the extra tips. Its conclusion was plausible. Because the district court did not clearly err in finding that the Defendants did not retain the extra tips, it likewise did not clearly err in finding that the Defendants carried their burden on the tip credit defense. And the Defendants'

success on their tip credit defense defeats the Plaintiffs' minimum wage claim.

## IV. CONCLUSION

The district court's judgment in favor of the Defendants is **AFFIRMED**.